IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

OTHA L. ABNEY,
     Petitioner,

vs.                    Case No. 5:08cv307/MCR/EMT

EDWIN G. BUSS,[1]
     Respondent.
_____/

## ORDER and REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's second amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 15). Respondent filed an answer and relevant portions of the state court record (Doc. 24). Petitioner filed a reply (Doc. 27).

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.     BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are undisputed and established by the state court record (*see* Doc. 24, Exhibits).[2] Petitioner was charged by a third amended

---

[1] Edwin G. Buss succeeded Walter A. McNeil as Secretary for the Department of Corrections, and is automatically substituted as Respondent. *See* Fed. R. Civ. P. 25(d)(1).

[2] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (Doc. 24). If a cited page has more than one page number, the court cites to the page number that appears in the lower right corner.

information filed in the Circuit Court in and for Jackson County, Florida, with one count of sexual battery (Count I), one count of kidnapping (Count II), one count of burglary of a dwelling with assault or battery (Count III), one count of fleeing or attempting to elude a law enforcement officer (Count IV), and one count of aggravated battery on a police officer (Count V) (Ex. B at 1–2). The offense conduct occurred on August 19, 2002 (*id.*). Following a jury trial on January 27–28, 2004 (Ex. C), Petitioner was convicted as charged on all counts (Ex. B at 222–23). He was sentenced to fifteen (15) years of imprisonment on Count I, life imprisonment on Count II, life imprisonment on Count III, fifteen (15) years of imprisonment on Count IV, and thirty (30) years of imprisonment (with a five-year mandatory) on Count V, all counts to run concurrently, with pre-sentence credit of 568 days (*id.* at 237–59, 263–71). He was adjudicated a prison releasee reoffender as to Counts I–III and sentenced to serve 100 percent of his sentences on those Counts, pursuant to Florida Statutes § 775.082(8)(b) (*id.* at 261).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA") (Ex. E). On July 20, 2005, the First DCA affirmed the judgment per curiam without written opinion (Ex. H). Abney v. State, 909 So. 2d 863 (Fla. 1st DCA 2005) (Table). Petitioner did not seek further review.

On January 27, 2006, Petitioner filed a habeas petition in the First DCA alleging ineffective assistance of appellate counsel (Ex. I). The First DCA denied the petition per curiam on May 5, 2006 (Ex. J). Abney v. State, 930 So. 2d 749 (Fla. 1st DCA 2006).

On July 11, 2006, Petitioner filed a pro se motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. K at 1–32). He subsequently filed an amended motion (*id.* at 33–68). On July 26, 2007, the state circuit court summarily denied Petitioner's motion (*id.* at 107–09). Petitioner appealed the decision to the First DCA (Ex. L). On March 4, 2008, the First DCA affirmed the decision per curiam without written opinion, with the mandate issuing April 29, 2008 (Exs. O, P). Abney v. State, 979 So. 2d 221 (Fla. 1st DCA 2008) (Table).

Petitioner, through counsel, filed the instant federal habeas action on October 2, 2008 (Doc. 1). Respondent concedes the petition is timely (Doc. 24 at 3).

## II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to"

---

[3] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the

court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gill v. Mecusker, — F.3d —, 2011 WL 609844, at *13 (11th Cir. Feb. 23, 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87 (Jan. 19, 2011)). The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. See Gill, supra at *17 (citing Harrington, 131 S. Ct. at 786). Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. See Harrington, 131 S. Ct. at 786; see also Gill, supra, at *18 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's

rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 2010 WL 609844, at * 18. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that

he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[4] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement. In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. 404 U.S. at 277. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a

---

[4]Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
            (A)  the applicant has exhausted the remedies available in the courts of the State; or
            (B) (i)  there is an absence of available State corrective process; or
                    (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  Id., 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  Id.

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[5]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).

---

[5]  The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

In <u>Baldwin</u>, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.*, 541 U.S. at 32. This language, while not part of the Court's holding, provides helpful instruction. With regard to this language, the Eleventh Circuit explained in <u>McNair v. Campbell</u>, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" <u>McNair</u> [v. Campbell], 315 F. Supp. 2d at 1184 (quoting <u>Vasquez v. Hillery</u>, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[6]

The Eleventh Circuit, prior to <u>Duncan</u>, had broadly interpreted the "fair presentation" requirement. After <u>Duncan</u>, however, the Eleventh Circuit has taken a more narrow approach. For example, in <u>Zeigler v. Crosby</u>, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the

---

[6] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." <u>McNair v. Campbell</u>, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. *Id.*

Florida Constitution. *Id.* at 1308 n.5. The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases. The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. *See* O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See* Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303. In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner. Ford v. Georgia, 498 U.S.

411, 424-25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[7] Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. Third, the state procedural rule must be adequate. Id. The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. Id.

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause and prejudice or a fundamental miscarriage of justice. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. Tower, 7 F.3d at 210. To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

---

[7] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits. Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.  PETITIONER'S CLAIMS

    a.    <u>"The Petitioner is in state custody in violation of his constitutional right to a speedy trial under the Sixth Amendment due to unreasonable delays by the State."</u>

Petitioner contends the State violated his Sixth Amendment right to a speedy trial by delaying his trial until 525 days after his arrest (Doc. 15 at 2–3, 10–17).  He argues the four-part balancing test for evaluating Sixth Amendment claims of denial of speedy trial, set forth in <u>Barker v. Wingo</u>, 407 U.S. 514, 92 S. Ct. 2182, 33, L. Ed. 2d 101 (1972), weighs on the side of a Sixth Amendment violation:  (1) the 525-day delay was overly long and presumptively prejudicial; (2) there were no legitimate reasons justifying the delay, and the State attempted to circumvent Florida's speedy trial rule, Rule 3.191 of the Florida Rules of Criminal Procedure, by waiting until expiration of the speedy trial period set forth in Rule 3.191 to amend the information and levy new charges arising from the same facts and circumstances as the original charges; (3) Petitioner never consented to the delay or waived his right to a speedy trial, and he affirmatively asserted his right; and (4) he was prejudiced by the delay because if his right to a speedy trial had been upheld, the State would not have had the opportunity to levy new charges against him (*id.*).

Respondent contends Petitioner failed to fairly present a Sixth Amendment speedy trial claim to the state courts because he failed to present it on direct appeal or in his state post-conviction motion (Doc. 24 at 7–12, 17).  Therefore, the claim was not properly exhausted and is procedurally defaulted and barred from federal review (*id.*).

In Petitioner's reply, he contends he exhausted his Sixth Amendment claim by referring to it throughout Ground IV of his Rule 3.850 motion (Doc. 27 at 2).

Upon review of the record, the undersigned concludes that Petitioner did not alert the state courts to the presence of a federal speedy trial claim.  In Ground IV of Petitioner's Rule 3.850 motion, he raised a claim of ineffective assistance of counsel based upon trial counsel's failure to protect his speedy trial rights guaranteed under Florida law and the Sixth and Fourteenth Amendments (Ex. K at 47–53).  However, Petitioner argued the speedy trial violation only as the underlying basis for his claim of ineffective assistance of counsel; he did not argue a federal speedy

trial claim independent of his ineffective assistance claim. Furthermore, although Petitioner raised two speedy trial issues on direct appeal of his conviction, he raised them as purely state law issues (Ex. E at 20–29). Therefore, Petitioner did not fairly present a Sixth Amendment speedy trial claim to the state courts.

Furthermore, Petitioner may not properly return to state court to present his claim, since a second direct appeal is not available, and a second Rule 3.850 motion would be subject to dismissal as successive under Rule 3.850(f) of the Florida Rules of Criminal Procedure. Therefore Petitioner's claims are procedurally barred from federal review unless he satisfies the "cause and prejudice" or "fundamental miscarriage of justice" exception to the procedural bar.

Petitioner has not alleged cause for his failure to raise his Sixth Amendment speedy trial claim on direct appeal or in his Rule 3.850 motion.[8] Additionally, he has not shown he is entitled to review under the fundamental miscarriage of justice exception, since he does not allege the existence of new evidence that establishes his innocence. *See* Schlup, 513 U.S. at 327; *see also* House, 547 U.S. 518, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006). Therefore, his Sixth Amendment speedy trial claim is barred from federal habeas review.

> b.  "Petitioner is in state custody in violation of his constitutional right to effective assistance of counsel under the Sixth Amendment due to trial counsel's failure to assert Petitioner's speedy trial right."

Petitioner contends he received ineffective assistance of trial counsel based upon counsel's failure to assert Petitioner's federal constitutional right to a speedy trial (Doc. 15 at 3–4, 17–20). Petitioner argues that Rule 3.191(a) of the Florida Rules of Criminal Procedure provides that every person charged with a crime must be brought to trial within 175 days of arrest if the crime charged is a felony (*id.* at 18). After expiration of that 175-day period, a defendant may file a separate pleading titled, "Notice of Expiration of Speedy Trial Time," at which time the trial court must hold a hearing and, unless the court finds the existence of a special circumstance that justifies the delay,

---

[8] In claim "e." of the instant petition, Petitioner asserts a claim of ineffective assistance of appellate counsel based upon counsel's failure to include in her argument of the state speedy trial issues the fact that Petitioner never waived his right to a speedy trial (*see* Doc. 15 at 5, 27–29). However, Petitioner does not argue that appellate counsel was ineffective for failing to raise a Sixth Amendment speedy trial claim. Therefore, the court does not construe claim "e." as an assertion of cause for Petitioner's failure to exhaust claim "a."

bring the defendant to trial within ten (10) days (*id.*). Pursuant to Rule 3.191, a defendant not brought to trial within this period must be forever discharged from the crime (*id.*).

Petitioner argues that in his case, he was arrested on August 19, 2002; therefore the 175-day period expired on February 10, 2003 (Doc. 15 at 18). Petitioner states he never waived his speedy trial rights, and his counsel did not seek any continuances until July of 2003, after the speedy trial period expired (*id.*). Therefore, upon expiration of the 175-day period, his counsel should have filed a Notice of Expiration of Speedy Trial Time and a motion for discharge, but counsel failed to do so (*id.*). Petitioner argues he was prejudiced by counsel's failure to file a notice of expiration and motion for discharge, because had he done so, the State would not have been able to file the second and third amended informations charging him with additional crimes, and Petitioner would likely have been discharged instead of brought to trial and convicted (*id.*).

Respondent concedes Petitioner exhausted this claim by fairly presenting it in his Rule 3.850 motion and arguing it on appeal of the state circuit court's denial of the motion (Doc. 24 at 17). Respondent argues the state court applied the correct legal standard, namely <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), in denying Petitioner's claim (*id.*). Respondent further contends Petitioner has failed to demonstrate that the state court's denial of his ineffective assistance of counsel claim was contrary to or an unreasonable application of <u>Strickland</u>, or that the state court's decision was based upon an unreasonable determination of the facts (*id.* at 18–24).

      1.    Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To obtain relief under <u>Strickland</u>, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. 466 U.S. at 687–88. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697. Thus, this court need not address the prejudice prong if the court determines that the performance prong is not satisfied. <u>Turner v. Crosby</u>, 339 F.3d 1247, 1279 (11th Cir. 2003); <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the

court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted).

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc). The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15). Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994). Counsel's performance is deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). "[T]here are no 'absolute rules' dictating what reasonable performance is or what line of defense must be asserted." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" Id. (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high. See Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" Id. (quoting Strickland, 466 U.S. at 693).

However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome. <u>Strickland</u>, 466 U.S. at 693–94. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694. Indeed, it would be "contrary to" the law clearly established in <u>Strickland</u> for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence. <u>Williams v. Taylor</u>, 529 U.S. at 405–406.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. <u>Strickland</u>, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

2.    Federal Review of State Court Decision

Petitioner raised this ineffective assistance of counsel claim as Grounds IV and VII in his Rule 3.850 motion (Ex. K at 47–53, 60–61). The state circuit court correctly identified the <u>Strickland</u> standard as the controlling legal standard (*id.* at 107–09). The state circuit court found as fact that Petitioner was granted numerous continuances in his criminal case (*id.* at 108). The court attached the Circuit Court Minutes in support of this finding (*id.* at 119–20). The court determined that the continuances constituted waivers of Petitioner's right to a speedy trial under Rule 3.191 (*id.* (citing <u>State v. Gibson</u>, 783 So. 2d 1155, 1158 (Fla. 5th DCA 2001))). The court further determined that under Florida law, defense counsel's waiver of a defendant's speedy trial rights was binding on the defendant, even in situations where counsel requested the continuance without consulting the defendant or against the defendant's specific wishes (*id.* at 108–09 (citing <u>Randall v. State</u>, 938 So. 2d 542, 544 (Fla. 1st DCA 2006))). The court concluded that since Petitioner's speedy trial rights were waived, defense counsel was not ineffective for failing to file a notice of expiration or a motion for discharge (*id.* at 109). The First DCA affirmed the decision without explanation. <u>Abney v. State</u>,

979 So. 2d 229 (Fla. 1st DCA 2008). Although the First DCA's written opinion did not provide reasoning for its affirmance on this issue, this court presumes that the First DCA's decision affirms the reasoning, as well as the judgment of the lower court. "'Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.'" Sweet v. Sec'y Dept. of Corrs., 467 F.3d 1311, 1316–17 (11th Cir. 2006) (quoting Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S. Ct. 2590, 2594, 115 L. Ed. 2d 706 (1991)); see also Harmon v. Barton, 894 F.2d 1268, 1273 (11th Cir. 1990) (noting that the "clear inference" to be drawn from a per curiam affirmance without written opinion is that the appellate court "accepted not only the judgment but the reasoning of the trial court.").

Initially, since the state circuit court correctly identified the Strickland standard as the controlling legal standard, Petitioner is not entitled to relief under the "contrary to" provision of § 2254(d)(1).

Additionally, Petitioner has failed to demonstrate that the state court's adjudication of his claim was based upon an unreasonable determination of the facts, or that the court unreasonably applied Strickland. This court must defer to the state court's determinations that (1) the "Written Plea and Notice of Hearing" forms[9] signed and filed by defense counsel constituted requests for continuances for purposes of Rule 3.191, (2) continuances granted to the defense waive a defendant's speedy trial rights under Rule 3.191, and (3) defense counsel may waive a defendant's speedy trial right under Rule 3.191, even though the defendant does not consent. See Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005) ("[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."); Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S. Ct. 1881, 1886, 44 L. Ed. 2d 508 (1975) ("State courts are the ultimate expositors of state law," and federal courts must therefore abide by their rulings on matters of state law) (citations and footnote omitted); Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983); see also New York v. Hill, 528 U.S. 100, 114–15, 120 S. Ct. 659, 145 L. Ed. 2d 560 (2000) (an attorney, acting without indication of particular consent from his client, may waive his client's statutory right to a speedy

---

[9] Although Defendant ultimately proceeded to a jury trial in this case, the "Written Plea and Notice of Hearing" forms were nevertheless used during certain pre-trial proceedings, as discussed more fully *infra*.

trial); <u>State v. Earnest</u>, 265 So. 2d 397, 400–01 (Fla 1st DCA 1972); *see also, e.g.,* <u>Lowery v. Cummings</u>, No. 3:05CV303/LAC/MD, 2006 WL 2361929, at *11 (N.D. Fla. July 17, 2006) (citing <u>Taylor v. State</u>, 557 So. 2d 138 (Fla. 1st DCA 1990)); <u>Butler v. Crosby</u>, No. 803CV1445T24TBM, 2005 WL 2708312, at *8 (M.D. Fla. Oct. 21, 2005 (citing <u>Blackstock v. Newman</u>, 461 So. 2d 1021, 1022 (Fla. 3d DCA 1985) and <u>State v. Kruger</u>, 615 So. 2d 757, 759 (Fla. 4th DCA 1993)).

Furthermore, the record supports the state court's factual finding that the defense was granted numerous continuances in the criminal case. Petitioner contends the docket entries characterized by the post-conviction court as requests for continuances by the defense were not motions for continuances but forms titled "Written Plea and Notice of Hearing," which defense counsel allegedly forced Petitioner to sign (*see* Doc. 15 at 7–8, 18–19; Doc. 1, Ex. K). Petitioner further asserts that when he signed the Written Plea and Notice of Hearing form on November 12, 2002, he specifically indicated, "Not Waiving Speedy Trial" (*id.*).

The Written Plea and Notice of Hearing forms, which are included in the record, state in relevant part:

> The defendant, through his/her undersigned Attorney, hereby acknowledges receipt of the Information and enters a plea(s) of not guilty, guilty or no contest.
> I, the defendant acknowledge that:
> . . . .
> 2.       I am to personally appear in court for:
> . . . .
> [X]       Pre-Trial on _____, 20___ at _____ o'clock.
> . . . .
> FAILURE TO COMPLY WITH ANY OF THE ABOVE REQUIREMENTS MAY RESULT IN A CAPIAS FOR MY ARREST AND INCARCERATION WITHOUT BOND UNTIL TRIAL.

(Doc. 24, Ex. A at 19–23, 26). Petitioner and defense counsel signed and filed Written Plea and Notice of Hearing forms on October 1 (agreeing to a pre-trial hearing on November 12, 2002), November 12, 2002 (agreeing to a pre-trial hearing on December 10, 2002, although Petitioner expressly noted, "Not Waiving Speedy Trial"), December 10, 2002 (agreeing to a pre-trial hearing on January 14, 2003), January 14, 2003 (agreeing to a pre-trial hearing on February 11, 2003), February 11, 2003 (agreeing to a pre-trial hearing on March 11, 2003), and March 11, 2003 (agreeing to a pre-trial hearing on April 8, 2003, and a trial date of April 21, 2003) (*id.*). Although the

documents were not per se motions for continuance, defense counsel's signing and filing the Written Plea and Notice of Hearing forms could reasonably be characterized as stipulations for extension of the speedy trial deadline under Rule 3.191(i)(1), which provides:

> **(i) When Time May Be Extended.** The periods of time established by [Rule 3.191] may be extended, provided the period of time sought to be extended has not expired at the time the extension was procured. An extension may be procured by:
>
> (1) stipulation, announced to the court or signed in proper person or by counsel, by the party against whom the stipulation is sought to be enforced; . . .

Fla. R. Crim. P. 3.191(i)(1).

Prior to the April 2003 trial date, the State filed a motion to obtain a DNA sample from Petitioner, which the court apparently granted, and on May 13, 2003, defense counsel stipulated to another pre-trial hearing on June 10, 2003 (Ex. B at 27–28, 33). At the pre-trial hearing on June 10, 2003, defense counsel again stipulated to the setting of another pre-trial conference on July 8, 2003, and on July 8, 2003, counsel agreed to a trial date of July 21, 2003 (*id.* at 38, 39).

Prior to the July trial date, defense counsel filed a motion for continuance to obtain a second DNA test (Ex. B at 40, 42–43). The trial court granted the motion and set trial for September 22, 2003 (*id.* at 40, 41, 44). Prior to the September 22 trial date, defense counsel filed a motion for continuance on the ground that counsel was hospitalized, and his release date was uncertain (*id.* at 53–54). The trial was re-set for October 27, 2003 (*see id.* at 57). Prior to that date, the State filed a motion for continuance on the ground that two material witnesses were not available on the trial date (*id.* at 57–58). The trial court re-set the trial for December 5, 2003 (*see id.* at 71). Prior to that date, defense counsel filed a motion to dismiss the second amended information on several grounds, including that it violated Petitioner's right to a speedy trial because it was filed over one year after he was arrested (*id.* at 69–70). Defense counsel also filed a motion for continuance of the trial date if the court denied the motion to dismiss, because the second amended information added a new life felony (the burglary charge), and counsel was not prepared to try the case in light of the new charge (*id.* at 70–71). The court granted the continuance and re-set the trial date for January 26, 2004 (*id.* at 75). The jury was selected that day, and Petitioner's trial commenced on January 27, 2004.

The state court's factual finding that the defense was granted numerous continuances is supported by the record. In light of this finding and the state court's determinations of state law issues, Petitioner failed to show that defense counsel had a meritorious basis for filing a notice of expiration of speedy trial time and motion for discharge. *See* Fla. R. Crim. P. 3.191(h), (i). Further, Petitioner failed to show that defense counsel was prepared for trial prior to the date his trial commenced, which is a prerequisite for filing a notice of expiration of speedy trial time. *See* Fla. R. Crim. P. 3.191(g). Therefore, Petitioner failed to establish ineffective assistance with regard to counsel's failure to assert his speedy trial rights under Rule 3.191.

Petitioner likewise failed to establish ineffective assistance with regard to counsel's failure to assert his federal constitutional right to a speedy trial. In determining whether a particular defendant has been deprived of his Sixth Amendment right to a speedy trial, the court should assess four factors: (1) length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. Barker, 407 U.S. at 530. The court assumes that the 525-day delay in bringing Petitioner to trial is "presumptively prejudicial," thereby necessitating inquiry into the last three factors of the Barker test. 407 U.S. at 530 ("The length of the delay [the first factor] is to some extent the triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.").

The second factor, that is, the reason for the delay, does not weigh in Petitioner's favor. The state court record indicates that defense counsel stipulated to many of the delays, as evidenced by counsel's filing the Written Plea and Notice of Hearing forms, and that defense counsel was actively litigating the case throughout this period, including engaging in discovery, filing motions to change venue, requesting appointment of experts, seeking statements of particulars, and requesting dismissal of certain charges (*see* Ex. A, Ex. B at 24–25, 29, 42–43, 50–51, 61–74). Further, when defense counsel sought delays by filing motions for continuances, the reasons for the delays were justifiable, including seeking additional, independent DNA testing after the State's DNA test results were received, and seeking delay due to counsel's hospitalization (Ex. B at 42–43, 53–54). Additionally, when the State sought delays, they had valid reasons for doing so, such as the need to obtain DNA testing, and the unavailability of two material witnesses. Although Petitioner asserts the State

circumvented the intent and effect of the speedy trial rule by making a strategic decision to wait until the speedy trial time expired to amend the information to levy new charges which arose from the same facts and circumstances as the original charges (*see* Doc. 15 at 13–14, 24), Petitioner has not submitted any evidence to support his assertion that the State deliberately attempted to delay the trial in order to hamper the defense. Therefore, the State's late amendments do not weigh heavily against the State.

Similarly, the third factor does not weigh in Petitioner's favor. Although a defendant's Sixth Amendment right to a speedy trial is not waived unless the defendant knowingly and voluntarily waives it, *see* Barker, 407 U.S. at 525–29, the only evidence that Petitioner asserted his right prior to trial was his notation "Not Waiving Speedy Trial" on the Written Plea and Notice of Hearing form he signed on November 12, 2002 (Ex. B at 20). However, this single, relatively passive objection to the setting of another pre-trial hearing instead of a trial date does not weigh heavily in Petitioner's favor in assessing whether he exercised his responsibility to assert his speedy trial right, especially since Petitioner signed all of the subsequent Written Plea and Notice of Hearing forms without reasserting his right, and did not otherwise assert his speedy trial right until after trial.[10] *See* Barker, 407 U.S. at 529 (third factor of balancing test allows court to attach different weight to situation in which defendant knowingly fails to object, from situation in which his attorney acquiesces in long delay without adequately informing defendant; and it allows court to weigh frequency and force of objections to delay of trial date as opposed to attaching significant weight to a purely pro forma objection).

With regard to the fourth and final factor, the prejudice to Petitioner, where—as here—the delay was not the result of bad faith or a deliberate attempt to "hamper the defense," and was a reasonable and efficient use of judicial resources, a defendant is required to show he suffered actual prejudice in order to prevail. Ringstaff v. Howard, 885 F.2d 1542, 1545 (11th Cir. 1989). In Barker, the Court noted that prejudice should be assessed in light of the interests the speedy trial right was designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and

---

[10] After Petitioner's trial and before sentencing, Petitioner filed a pro se notice of expiration of speedy trial and motion for discharge (*see* Ex. K at 114–17). The court denied both motions at the sentencing hearing (Ex. B at 244–45).

concern of the accused; and (iii) to limit the possibility that the defense will be impaired." 407 U.S. at 532. Of these three interests, the Supreme Court characterized the third as being the most significant. *Id.* Although the delay in this case caused Petitioner anxiety and concern that his rights would not be honored, and subjected him to oppressive pre-trial incarceration (*see* Doc. 15 at 16), Petitioner failed to show that the delay in any way affected his ability to adequately prepare or present his case.[11] Therefore, the fourth factor does not weigh heavily in Petitioner's favor.

Weighing the four <u>Barker</u> factors, the court concludes Petitioner failed to show that the factors weighed in his favor such that defense counsel's failure to assert his Sixth Amendment right to a speedy trial was unreasonable, or that there was a reasonable probability that the outcome of the proceedings would have been different if counsel had asserted his speedy trial rights. *See, e.g.*, <u>United States v. Knight</u>, 562 F.3d 1314, 1323–24 (11th Cir. 2009) (two-year period of delay between defendant's indictment for being a felon in possession of a firearm and his trial date did not violate the Sixth Amendment right to speedy trial; although any delay over one year was presumptively prejudicial, and defendant asserted his right to speedy trial promptly, defendant was not actually prejudiced by the delay, despite his incarceration in a maximum-security federal prison while awaiting trial, since he would otherwise have been housed in a state maximum-security facility, and there was not showing that his defense was prejudiced by the delay); <u>United States v. Roggio</u>, 863 F.2d 41, 42–43 (11th Cir. 1989) (defendant's Sixth Amendment right to speedy trial was not impaired by delay of 30 months between issuance of first indictment and trial and delay of 16 months between issuance of second indictment and trial; the delays were attributable to defendant's conduct, including his first attorney's litigation of a series of motions to withdraw as counsel, and his attorney's obtaining a six-month continuance which the Government opposed, and defendant's signing of waiver to allow new counsel time to prepare for complex fraud trial; defendant failed to assert his speedy trial right prior to trial; and defendant did not appear to be prejudiced by delay of his trial); <u>Martinez v. McNeil</u>, No. 09-222687-CID, 2010 WL 3222120, at *9 (S.D. Fla. July 14,

---

[11] Thus, to the extent Petitioner contends he was prejudiced by the State's addition of charges during the delay, he has not established prejudice in the constitutional sense. Petitioner does not allege, nor do the fact suggest, that his defense to any of the charges, including the charges added by the State, was impaired.

2010), *Report and Recommendation Adopted by*, 2010 WL 32222116 (S.D. Fla. Aug. 16, 2010) (petitioner failed to establish denial of constitutional right to speedy trial; it was apparent from history of criminal proceeding that postponement of trial proceedings was for the most part occasioned by actions of the accused himself; further, petitioner alleged no facts to indicate that prosecution deliberately delayed trial to hamper his defense; moreover, record revealed that, based upon the several motions for continuances sought and obtained by trial counsel, petitioner had waived his right to speedy trial; most significantly, petitioner did not allege, let alone demonstrate, that delay in any way prejudiced his ability to defend against charges); Wells v. McNeil, No. 08-61621-CIV, 2009 WL 2767659, at *12 (S.D. Fla. Aug. 25, 2009) (petitioner was not entitled to federal habeas relief on claim of ineffective assistance of counsel based upon counsel's waiver of his speedy trial rights without his consent; record indicated that at least part of delay of trial was chargeable to petitioner in that counsel sought and received numerous continuances, counsel was actively pursuing a defense and preparing for trial by deposing witnesses and conducting investigation; further, petitioner failed to establish prejudice because delay did not in any way prejudice petitioner's ability to defend charges); McIntyre v. Secretary, DOC, No. 2:06-cv-430-FtM-29-DNF, 2009 WL 2579317, at *4–6 (M.D. Fla. Aug. 18, 2009) (defendant's Sixth Amendment right to speedy trial was not violated although Florida law set forth 175-day speedy trial period, and although defendant, who asserted right to speedy trial under Florida procedure, was not brought to trial until 200 days after arrest; reasons for delay were to permit State to locate missing witness and to allow defense counsel sufficient time to properly prepare for trial in light of State's newly proffered evidence; additionally, petitioner waived any speedy trial issue by consenting to the extension; even if defendant did not waive the speedy trial issue, defendant was not prejudiced by delay); Sanders v. McDonough, No. 4:07cv206/RH/WCS, 2008 WL 4382802, at *13 (N.D. Fla. Sept. 24, 2008) (habeas petitioner failed to show attorney error or prejudice with regard to counsel's failure to assert speedy trial right where prosecution clearly could have gone to trial if speedy trial rights had been asserted, since evidence sufficient to convict was available to prosecution almost immediately after petitioner's arrest (crimes arose from sting operation and transaction was

simultaneously recorded on audiotape), and it was objectively reasonable for counsel to take time

to gather evidence and pursue entrapment defense, even if petitioner wanted to demand speedy trial)

In light of the above discussion, Petitioner has failed to establish that the state court's denial

of his ineffective assistance of counsel claim was based upon an unreasonable determination of the

facts, or was contrary to or an unreasonable application of <u>Strickland</u>.  Therefore, he is not entitled

to federal habeas relief on claim "b."

    c.    <u>"Petitioner is in state custody in violation of his constitutional right to due process under the Fourteenth Amendment due to the State's use of amended informations to circumvent the speedy trial rule and levy new charges."</u>

Petitioner contends the State's use of amended informations to bring new charges against him

more than 400 days after his arrest violated his Sixth Amendment right to a speedy trial applicable

to the states through the Fourteenth Amendment Due Process Clause (Doc. 7 at 4, 20–24).  He states

the State introduced a charge of burglary in the second amended information filed 424 days after his

arrest, which represents the State's attempt to circumvent the intent and effect of Florida's speedy

trial rule (*id.*).  Petitioner contends the State's effort to bypass his speedy trial rights under Florida

law violated his Sixth Amendment speedy trial rights; therefore, his continued incarceration violates

his Fourteenth Amendment due process rights (*id.*).

Respondent contends Petitioner never presented this federal due process to the state courts

on direct appeal or in his state post-conviction motion (Doc. 24 at 9–10, 24).  Therefore, it was not

properly exhausted and is defaulted and procedurally barred (*id.*).

In Petitioner's reply brief, he asserts he fairly presented this claim in Ground V of his Rule

3.850 motion (Doc. 27 at 2).

The record shows that in Ground V of Petitioner's Rule 3.850 motion, he argued that the trial

court lost subject matter jurisdiction to try, convict, and sentence him when he was not brought to

trial within the speedy trial period set forth in Rule 3.191 (Ex. K at 54–58).  He argued that neither

he nor his counsel waived his speedy trial rights under Rule 3.191, and in fact he explicitly asserted

his right by writing "Not Waiving Speedy Trial" on a written plea form filed on November 12, 2002

(*id.* at 55).  Petitioner further argued that although the State could properly amend the information

after the speedy trial period expired, the State could not do so in an attempt to circumvent the intent

and effect of Rule 3.191 where, as here, the new charges arose from the same facts and circumstances as the original charge (*id.* at 56–58).

The undersigned concludes that Petitioner exhausted claim "c" only to the extent he argues that the trial court violated his federal due process rights by trying, convicting, and sentencing him on the third amended information because the court lack subject matter jurisdiction due to the State's filing the third amended information after the speedy trial time expired and as a deliberate attempt to circumvent Rule 3.191. Therefore, only this claim is properly before this court. As discussed *supra* in claim "a", Petitioner did not raise a Sixth Amendment speedy trial claim in his post-conviction motion or on direct appeal of his conviction. Therefore, that claim is not exhausted and is procedurally barred from federal review.

The state circuit court denied Petitioner's due process claim on the ground that Rule 3.191 is not self-executing, and the trial court did not lose jurisdiction because Petitioner failed to take the necessary steps to trigger application of the rule and its accordant protections (Ex. K at 109 (citing State v. Gibson, 783 So. 2d 1155, 1158 (Fla. 5th DCA 2001))).

As previously discussed, a state court's interpretation of state law binds this court. *See* Bradshaw, 546 U.S. at 76; Mullaney, 421 U.S. at 691; Carrizales, 699 F.2d at 1055. Therefore, this court must abide by the state court's determinations that: (1) Rule 3.191 is not self-executing, (2) Petitioner failed to take the necessary steps to trigger application of Rule 3.191, and (3) the trial court did not lose jurisdiction of the criminal case because Petitioner failed to invoke the protections of Rule 3.191. The state court's rejection of Petitioner's jurisdictional argument necessarily resolved his federal due process argument, since his due process claim rested exclusively on his jurisdictional argument. Moreover, although the Supreme Court clearly articulated the standard applicable to Sixth Amendment claims of speedy trial violations, *see* Barker v. Wingo, 407 U.S. 514 (1972), Petitioner has cited no Supreme Court holding applicable to Fourteenth Amendment claims of due process violations based upon the State's bringing new charges after a defendant's state speedy trial period has expired, and the court is aware of none. Therefore, Petitioner has failed to establish that the state court's adjudication of his due process claim was contrary to or an unreasonable application of clearly established federal law.

d.    "Petitioner is in state custody in violation of his constitutional right to effective assistance of counsel under the Sixth Amendment due to trial counsel's irreconcilable conflict of interest."

Petitioner contends he was denied effective assistance of counsel under Strickland because his trial counsel, Attorney Green, had an irreconcilable conflict of interest during all stages of representation (Doc. 15 at 4–5, 24–27). Petitioner states Attorney Green had represented the Sneads Police Department for twenty-five (25) years (*id.*). Petitioner states one of its officers, Officer Carl Davis, had been "deeply involved" in the case because he had witnessed Deputy Burt McAlpin serve a court order on Petitioner days before his arrest, which was relevant to the issue of whether Petitioner had consent to enter the victim's home (*id.*). Petitioner states Officer Davis's testimony would have strengthened Petitioner's defense to the burglary charge, that is, he had consent to enter the home, and he did not enter it with intent to commit a crime (*id.*). Petitioner asserts he sought to call Officer Davis to testify regarding the validity of any injunction that existed at the time Petitioner entered the home, but Attorney Green declined to call Officer Davis because of counsel's existing relationship with the police department (*id.*). Petitioner states he discovered the conflict after trial and raised the issue by filing a pro se motion to dismiss counsel and for new trial, which was heard at the sentencing hearing (*id.*). Petitioner states Attorney Green informed the court that he had "made a deal with the State" (as Petitioner describes it) that no officers from the Sneads Police Department would be called at trial, but the trial court denied Petitioner's motion (*id.*). Petitioner states he would have been able to put forth a more effective defense if counsel had not been affected by the conflict, which conflict he failed to disclose to Petitioner (*id.*).

Respondent concedes Petitioner fairly presented this claim to the state courts (Doc. 24 at 25). Respondent contends Petitioner has failed to establish that the state court's adjudication of the claim was contrary to or an unreasonable application of clearly established federal law (*id.* at 25–33).

1.    Clearly Established Federal Law

The clearly established federal standard for evaluating a claim of ineffective assistance of counsel is set forth *supra*. However, there is a limited presumption of prejudice where counsel has an actual conflict of interest. Strickland, 466 U.S. at 691 (citing Cuyler v. Sullivan, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980)). This presumption, which requires automatic reversal,

applies only where an attorney is forced to represent co-defendants over his own objection, unless the court has found no conflict. Mickens v. Taylor, 535 U.S. 162, 167–68, 122 S. Ct. 1237, 1241–42, 152 L. Ed. 2d 291 (2002) (discussing Holloway v. Arkansas, 435 U.S. 475, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978)). The Mickens Court noted that while the Courts of Appeals had "unblinkingly" applied Sullivan to all kinds of purported ethical conflicts: "[T]he language of Sullivan itself does not clearly establish, or indeed even support, such expansive application. '[U]ntil,' it said, 'a defendant shows that his counsel *actively represented* conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance.'" Mickens, 535 U.S. at 175 (quoting Sullivan with added emphasis, other citations omitted). Thus, the Eleventh Circuit held that Supreme Court precedent does not clearly establish that the Sullivan rule of presumed prejudice applies in other conflict situations, that is, outside concurrent, multiple representation circumstances. *See* Schwab v. Crosby, 451 F.3d 1308, 1324–25, 1327–28 (11th Cir. 2006). In conflict situations where prejudice is not presumed, a petitioner must demonstrate that an adverse effect on counsel's performance flowed from the conflict of interest. *See* Hunter v. Sec'y Dep't of Corr., 395 F.3d 1196, 1201–02 (11th Cir. 2005); Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1357–58 (11th Cir. 2005).

2.    Federal Review of State Court Decision

Petitioner raised this claim of conflict of interest as Claim One in his Rule 3.850 motion (Ex. K at 37–41). The state circuit court denied the claim on the ground that Petitioner failed to identify specific evidence in the record that suggesting his interests were compromised; therefore, he failed to establish that an actual conflict of interest adversely affected counsel's performance (*id.* at 107–08 (citations omitted)).

As discussed *supra*, to establish a Sullivan claim (thereby relieving Petitioner of any burden to establish prejudice) Petitioner was required to show that Attorney Green actively represented inconsistent interests. When the conflict issue was addressed at the sentencing hearing, Attorney Green stated on the record that he represented the Town of Sneads and had been doing so for twenty-five (25) years (Ex. B at 242). He stated he generally did not take cases as a public defender in which the police department was involved (*id.*). Attorney Green stated that the Sneads Police

Department had a minor role in Petitioner's case, because a few officers were involved in pursuing Petitioner when he eluded police (*id.* at 242–43). Attorney Green additionally stated that one of Sneads police officers involved in the pursuit filed a criminal complaint of aggravated assault with a motor vehicle against Petitioner (*id.* at 243). Green stated he and the prosecutor discussed the potential conflict issue, and the prosecutor declined to pursue the aggravated assault charge and determined he would not call any of the Sneads officers as witnesses, because they had only a minor role in the pursuit (*id.*). Instead, the prosecutor called officers from the Chattahoochee Police Department and the Jackson County Sheriff's Department as witnesses, because they were in the "lead pursuit" vehicles (*id.*). The prosecutor confirmed Green's testimony (*id.* at 243–44). Attorney Green additionally stated that he did not need to call any Sneads officers as witnesses because "they certainly weren't going to help us" (*id.* at 243). Petitioner advised the court that he had wanted to call Officer Carl Davis as a witness, because he could testify "as far as the injunction and the day that they give [sic] me the paperwork" (*id.* at 244). The trial court denied Petitioner's motion to dismiss counsel and for new trial (*id.*).

Based upon this record, Petitioner failed to demonstrate that Attorney Green actively represented inconsistent interests. Therefore, he was not entitled to a presumption of prejudice under Sullivan. Further, Petitioner failed to demonstrate that Attorney Green's relationship with the Sneads Police Department adversely affected counsel's performance. Attorney Green stated on the record that he did not call any Sneads officers as witnesses because their testimony would not have been helpful to the defense (Ex. B at 243). Petitioner suggests Officer Davis could have testified regarding documents that were served upon Petitioner on August 12, 2002; however, Petitioner has failed to show that such testimony would have been helpful to the defense. In Petitioner's Rule 3.850 motion, he asserted Officer Davis could have testified that on August 12, 2002, he witnessed another law enforcement officer serve Petitioner with a court order requiring Petitioner to vacate the home he shared with his then-wife (where the burglary and sexual battery on his then-wife occurred) within twenty (20) days; and Davis would also have testified that Petitioner was not served an additional order that prohibited him from entering the home (Ex. K at 42). Petitioner argued the jury would have acquitted him of the burglary charge if they had heard Davis's testimony (*id.*).

Review of the record shows that Petitioner offered no proof, either to the state court or this court, substantiating his speculation as to the content of Officer Davis's proposed testimony. He failed to present testimony or a sworn affidavit from Officer Davis stating what his trial testimony would have been. Petitioner's allegations are thus insufficient to show that Officer Davis's testimony would have been helpful to the defense. In the absence of evidence that Davis's testimony would have been helpful, Petitioner cannot show that Attorney Green's relationship with the Sneads Police Department adversely affected his representation. Therefore, Petitioner has failed to show that the state court's denial of his conflict of interest claim was contrary to or an unreasonable application of clearly established federal law.

Moreover, to the extent Petitioner asserts a claim of ineffective assistance of counsel based upon counsel's failure to call Officer Davis as a witness (independent of his conflict of interest claim), he is not entitled to relief. He raised this claim as Claim Two of his Rule 3.850 motion (Ex. K at 41–44). As discussed *supra*, Petitioner asserted Officer Davis could have provided "expert" testimony that on August 12, 2002, he witnessed another law enforcement officer serve Petitioner with a court order requiring Petitioner to vacate the home he shared with his then-wife (where the burglary and sexual battery on his then-wife occurred) within twenty (20) days; and Officer Davis would also have testified that Petitioner was <u>not</u> served an additional order that prohibited him from entering the home (Ex. K at 42). Petitioner argued the jury would have acquitted him of the burglary charge if they had heard Davis's testimony (*id.*).

The state court denied the claim on the ground that Petitioner failed to show he was prejudiced by counsel's failure to call Officer Davis as a witness (Ex. K at 108). The court determined that Officer Davis could not have provided "expert testimony" as to the content of the court orders, and the "best evidence" of the content of the orders was the orders themselves (*id.*). The court further determined that either order (the temporary injunction for protection against domestic violence or the civil order requiring Petitioner to vacate the home) would have established that Petitioner had no legal right to enter the home where his then-wife lived (*id.*). Therefore, Petitioner failed to show that Officer Davis's testimony would have undermined the burglary charge (*id.*).

As previously discussed, Petitioner failed to offer any proof substantiating his speculation as to the content of Officer Davis's proposed testimony. Furthermore, evidence of the content of the orders, and whether they were served upon Petitioner, was presented to the jury. Deputy Burt McAlpin testified at trial regarding his service of the orders on Petitioner. Deputy McAlpin testified that on August 12, 2002, he served Petitioner with a Temporary Order issued by the Honorable Judge Wright on August 6, 2002, concerning temporary possession of the marital home and other property (Ex. C at 35–46). The order was dated August 6, 2002, *nunc pro tunc*, July 10, 2002 (*see id.* at 68–71). Deputy McAlpin testified that the same day (August 12), he also served Petitioner with an Order For Emergency Relief and Temporary Injunction, issued August 9, 2002, enjoining Petitioner from going to or in or within 500 feet of the home at 1705 Ham Pond Road (*id.*). The court orders that Deputy McAlpin served upon Petitioner were admitted into evidence (*id.*). On cross-examination, defense counsel elicited testimony that cast doubt on the legal sufficiency of the Order For Emergency Relief and Temporary Injunction and McAlpin's service of that document upon Petitioner. Deputy McAlpin admitted that while the Temporary Order was signed by Judge Wright, the Order For Emergency Relief and Temporary Injunction did not bear Judge Wright's signature (*id.* at 42–43). McAlpin also admitted that while the Temporary Order was a certified copy, the Order For Emergency Relief and Temporary Injunction was not certified (*id.* at 42). Additionally, Deputy McAlpin admitted that although he included the date and time of service with his signature on the Temporary Order, he did not include the date and time of service on the Order For Emergency Relief and Temporary Injunction (*id.* at 43).

Additionally, Petitioner admitted during his trial testimony that he attended a hearing on July 10, 2002, during which Judge Wright awarded Petitioner's then-wife temporary and exclusive possession of the home, and he (Petitioner) was supposed to vacate the home by July 20, 2002 (Ex. B at 359). Petitioner testified that Deputy McAlpin served him with a copy of the temporary order on August 12, 2002, and made it clear that if he went to the house, he "would be in trouble" (*id.* at 359–60).

In light of the evidence presented at trial, Petitioner has failed to show a reasonable probability that the outcome of trial would have been different if Officer Davis had testified.

Therefore, he has failed to establish that the state court's denial of his ineffective assistance of counsel claim, based upon counsel's failure to call Davis as a witness, was contrary to or an unreasonable application of <u>Strickland</u>.

For the aforementioned reasons, Petitioner has failed to show he is entitled to federal habeas relief on claim "d."

>    e.    <u>"Petitioner is in state custody in violation of his constitutional right to effective assistance of counsel under the Sixth Amendment due to appellate counsel's failure to argue that no waiver of speedy trial existed."</u>

Petitioner contends appellate counsel failed to include in her appeal the fact that Petitioner never waived his right to a speedy trial by requesting continuances prior to expiration of the speedy trial period (Doc. 15 at 5, 27–29). He states appellate counsel discussed the speedy trial issue in general and argued that Petitioner did not file a motion for continuance until July of 2003 (after the speedy trial period expired), but she did not argue that Petitioner never waived his right to a speedy trial prior to its expiration, nor did she mention that a motion for continuance must be accompanied by a certificate that the motion is being made in good faith (therefore, the Written Plea and Notice of Hearing forms filed prior to expiration of the speedy trial period did not constitute delays attributable to the defense) (*id.* at 28). Petitioner contends the waiver issue was paramount to his speedy trial claim; and if appellate counsel had argued it, there is a reasonable probability the appellate court would have been swayed by it (*id.* at 29).

Respondent concedes Petitioner exhausted this claim by raising it in his state habeas petition (Doc. 24 at 34). Respondent contends Petitioner has failed to demonstrate that the state court's adjudication of the claim was contrary to or an unreasonable application of clearly established federal law (*id.* at 35–37).

>    1.    Clearly Established Federal Law

The proper standard for evaluating a claim of ineffective assistance of appellate counsel is the <u>Strickland</u> standard. *See* <u>Smith v. Robbins</u>, 528 U.S. 259, 285,120 S. Ct. 746, 764, 145 L. Ed. 2d 746 (2000) (citation omitted). The two components of an ineffectiveness claim under <u>Strickland</u> are performance and prejudice, and if an insufficient showing is made as to one, the court need not address the other. <u>Strickland</u>, 466 U.S. at 697. The focus of inquiry under the performance prong

of the <u>Strickland</u> standard is whether counsel's assistance was "reasonable considering all the circumstances." *Id.* at 691. Appellate counsel who file a merits brief need not (and should not) raise every nonfrivolous claim but, rather, may select from among them in order to maximize the likelihood of success of on appeal. <u>Jones v. Barnes</u>, 463 U.S. 745, 753–54, 103 S. Ct. 3308, 3314, 77 L. Ed. 2d 987 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). To demonstrate prejudice, Petitioner must show a reasonable probability that, but for his counsel's unreasonable failure to brief a particular issue, Petitioner would have prevailed on appeal. *See* <u>Robbins</u>, 528 U.S. at 285.

The Eleventh Circuit has issued several decisions interpreting the <u>Strickland</u> standard with regard to claims of ineffective assistance of appellate counsel. Appellate counsel cannot be deemed ineffective for failing to raise issues "reasonably considered to be without merit." <u>United States v. Nyhuis</u>, 211 F.3d 1340, 1344 (11th Cir. 2000) (quoting <u>Alvord v. Wainwright</u>, 725 F.2d 1282, 1291 (11th Cir. 1984)). Additionally, where an issue is not preserved for appellate review, appellate counsel's failure to raise the issue is not constitutionally deficient as it is based on the reasonable conclusion that the appellate court will not hear the issue on its merits. <u>Diaz v. Sec'y Dep't of Corrs.</u>, 402 F.3d 1136, 1142 (11th Cir. 2005); <u>Atkins v. Singletary</u>, 965 F.2d 952, 957 (11th Cir. 1992); <u>Francois v. Wainwright</u>, 741 F.2d 1275, 1285–86 (11th Cir. 1984). Moreover, the arguments omitted from the appeal must have been significant enough to have affected the outcome of the appeal. <u>Nyhuis</u>, 211 F.3d at 1344 (citing <u>Miller v. Dugger</u>, 858 F.2d 1536, 1538 (11th Cir. 1988)).

2.      Federal Review of State Court Decision

Petitioner raised this claim of ineffective assistance of appellate counsel in his state habeas petition (Ex. I at 8–14). The First DCA denied the petition on the merits (Ex. J). The First DCA did not cite <u>Strickland</u>; however, a state court need not cite to, nor even be aware of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." <u>Early v. Packer</u>, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002).

Upon review of the parties' briefs submitted in Petitioner's direct appeal, the undersigned concludes that Petitioner failed to demonstrate deficient performance or prejudice. Petitioner's

appellate counsel argued two issues on appeal:  (1) the trial court committed reversible error in denying defense counsel's motion to dismiss the second amended information filed after the speedy trial period provided in Rule 3.191 had expired following his arrest for the conduct that gave rise to the crimes charged in that information, and (2) the trial court committed reversible error in denying defense counsel's motion to dismiss the felony burglary charge filed one year after the speedy trial period had expired and allowing the State to proceed to trial on the third amended information (Ex. E at 20–28).  Counsel argued that the speedy trial time began on the dates Petitioner was arrested on the charges, namely, August 19, 2002  (when he was arrested for fleeing or attempting to elude and aggravated battery on a police officer) and August 22, 2002 (when he was arrested for violation of an injunction for protection against domestic violence, sexual battery, and kidnapping)  (*id.* at 22).  Appellate counsel asserted that the initial information, filed September 2, 2002, charged Petitioner with the first two crimes, fleeing or attempting to elude and aggravated battery on a police officer, and the amended information, filed November 14, 2002, charged Petitioner with the remaining three crimes (*id.* at 22).  Counsel acknowledged that the speedy trial time had not expired when the amended information was filed; however, she argued the speedy trial period expired on February 10 and February 13, 2003, respectively, with respect to the two sets of charges (*id.* at 22–23).  Counsel argued that the record did not reflect any continuances requested by the defense prior to the expiration of either speedy trial period, and the only continuances requested by the defense were in July and September of 2003, after the speedy trial period had run (*id.* at 23, n.5).  She argued that the filing of the second amended information, on October 17, 2003, adding a new burglary charge and dropping the violation of an injunction charge, evidenced the State's attempt to avoid the intent and effect of Rule 3.191, because the State essentially re-filed charges based on the same conduct after the speedy trial period ran, and this evidenced an abuse of power by the State (*id.* at 23–25).  Counsel argued Petitioner was therefore entitled to dismissal of the second amended information, and the trial court's denial of the motion to dismiss was reversible error (*id.* at 25).  Counsel argued that this error was further compounded by the trial court's refusal to dismiss the burglary charge, since it was filed well beyond the speedy trial time expired and significantly changed the substance of the charges (*id.* at 26–28).

In its answer brief, the State argued that Petitioner requested numerous continuances prior to expiration of the Rule 3.191 time limit, which constituted a waiver of the time limits under the rule (Ex. F at 10– 14). The State further argued that even if the continuances granted prior to the defense's July 16, 2003 motion for continuance were not attributable to the defense, the July 16 motion for continuance, filed after the expiration of the 175-day speedy trial period, waived Petitioner's Rule 3.191 rights, since no notice of expiration of speedy trial time was filed prior to the motion for continuance (*id.*). In its answer brief, the State also noted that at the hearing on defense counsel's motion to dismiss the second amended information, the prosecutor argued that the defense waived his speedy trial rights as to the second amended information by seeking a continuance during the pendency of the amended information, and Petitioner never objected or argued that he had never waived the time limits (*id.* at 11–12). Additionally, the State argued that the rule prohibiting the State from filing an information more than 175 days following arrest did not apply to the filing of an amended information on an existing prosecution (*id.* at 10, 14–16).

In her reply brief, Petitioner's appellate counsel argued that the State's assertion that the defense requested numerous continuances prior to expiration of the 175-day speedy trial period was not borne out by the record (Ex. G at 4).

The First DCA affirmed Petitioner's conviction, thereby rejecting the argument that the trial court erred by failing to dismiss the second amended information and the burglary charge on the ground that the second amended information was filed, and the burglary charge brought, after the speedy trial period had expired. Even if appellate counsel had argued that the pre-expiration continuances were not attributable to the defense and, therefore, did not waive his speedy trial rights under Rule 3.191, the fact remained that Petitioner never invoked his rights under the Rule 3.191 by filing a notice of expiration of speedy trial time and motion for discharge, as required under the rule. Therefore, he was not entitled to the protections of the speedy trial rule. Petitioner has thus failed to show a reasonable probability of a different result on appeal if appellate counsel had included the waiver argument that Petitioner faults her for omitting. For this reason, Petitioner has failed to show that the First DCA's denial of his claim was contrary to or an unreasonable application of <u>Strickland</u>.

 f. <u>"Petitioner is in state custody in violation of his constitutional right to due process under the Fourteenth Amendment due to judicial bias existing at the time of hearing."</u>

Petitioner contends he was denied his due process right guaranteed by the Fourteenth Amendment because the trial judge exhibited bias towards him (Doc. 15 at 5–6, 29–32).

Respondent contends Petitioner failed to properly exhaust this claim (Doc. 24 at 10–12). Respondent states Petitioner claimed in his Rule 3.850 motion that the trial court's rulings or failure to rule and other unnamed acts of intimidation established judicial bias (*id.* at 10). Respondent states the post-conviction court found the claim procedurally barred because it could have and should have been raised on direct appeal (*id.*). The post-conviction court alternatively ruled that the claim was legally insufficient because it was based upon nothing but unsupported generalizations (*id.* at 10–11). Respondent additionally argues Petitioner failed to indicate to the state court that he was presenting a federal claim (*id.* at 11). Therefore, his Fourteenth Amendment claim presented here was not properly exhausted and is thus barred from federal review.

In Petitioner's Rule 3.850 motion, he raised a claim of judicial bias as Claim VIII (Ex. K at 61). The entirety of his argument was the following:

> **TRIAL COURT COMMITTED FUNDAMENTAL REVERSIBLE ERROR WHEN THE PRESIDING JUDGE IMPOSED JUDICIAL BIAS AND PREJUDICE THAT AFFECTED THE OUTCOME OF THE CASE.**
>
> <u>FACTS</u>
>
> The defendant asserts that in his numerous pretrial appearances before the court that he was subjected to acts of judicial bias and prejudice by the presiding justice Richard Albritton, whether it was in chambers or in open court, he was subjected to judicial misconduct injected by the court that violated the defendant's right to a fair and impartial trial, and in violation of his due process rights. He was also subjected to acts of intimidations [sic], and the failure of the court to rule on some of the pretrial motions was attributed to this judicial bias. The issues of which were substantive and dispositive in nature and the results of these pretrial motions would have resulted in a different results [sic].

(*id.* at 61–62).

The undersigned concludes that Petitioner did not fairly present a federal due process claim to the state courts. Petitioner did not cite in conjunction with the claim a federal source of law on which he relied or a case deciding such a claim on federal grounds; indeed, he did not even label his claim "federal." Furthermore, as the Eleventh Circuit noted in <u>Zeigler</u>, 345 F.3d at 1308 n.5,

Petitioner's statement that the alleged judicial bias "violated the defendant's right to a fair and impartial trial [ ] in violation of his due process rights" could be interpreted as asserting a due process claim under the Due Process Clause of the Florida Constitution. Petitioner's cursory and conclusory sentence, unaccompanied by citations to federal law, did not present to the Florida courts the federal claim asserted to this federal court. *See id.*

Additionally, assuming arguendo that Petitioner fairly presented the federal nature of his due process claim to the state courts, the state court's rejection of the claim on state procedural grounds bars federal review of the claim. The state circuit court determined that the claim was procedurally barred from review because the issue could have been raised on direct appeal (Ex. K at 109 (citing Rodriguez v. State, 919 So. 2d 1252, 1267 (Fla. 2005)).[12] The court alternatively concluded that Petitioner failed to state a sufficient basis for his claim, because he did not allege any specific instance of bias and instead made unsupported generalizations (*id.*).

The last state court rendering judgment clearly and expressly stated it was relying on a state procedural rule to resolve Petitioner's federal claims. Additionally, the state court's decision on the procedural issue rested entirely on state law grounds, namely, the state rule that claims which could have been raised on direct appeal are procedurally barred in a motion for post-conviction relief, and this rule is firmly established and regularly followed by Florida courts.[13] *See* Schwab v. State, 814

---

[12] The undersigned notes that the state circuit judge who considered and denied Petitioner's Rule 3.850 motion was not the same judge who presided over the trial proceedings.

[13] Although the state circuit court alternatively determined that Petitioner failed to state a legally sufficient claim, this does not nullify the procedural default. *See* Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995) (where state court rests its denial of claim on state procedural grounds but alternatively reviews claim on the merits, federal courts on habeas review should apply state procedural bar and decline to reach the merits); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994). As the Supreme Court explained:

> A state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.

Harris v. Reed, 489 U.S. 255, 264 n.10, 109 S. Ct. 1038, 1044 n.10, 103 L. Ed. 2d 308 (1989) (citation omitted). Furthermore, an appellate court's per curiam affirmance of a decision that is based on a procedural bar is deemed to affirm the procedural bar. *See* Ylst, 501 U.S. at 803; (although a procedural bar may be removed if the last state court to be presented with a claim ignores the bar and reaches the merits, when the trial court's denial of a claim on procedural grounds is affirmed by the appellate court per curiam and without opinion, the appellate decision is deemed to have

Case No. 5:08cv307MCR/EMT

So. 2d 402, 407–08 (Fla. 2002). Moreover, Petitioner has not alleged, let alone established, he is entitled to review of his claim under the "cause and prejudice" or the fundamental miscarriage of justice exception to the procedural bar. Therefore, claim "f" is barred from federal habeas review.

## V. CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Edwin G. Buss is substituted for Walter A. McNeil as Respondent.

And it is respectfully **RECOMMENDED**:

1. That the second amended petition for writ of habeas corpus (Doc. 15) be **DENIED**.

2. That a certificate of appealability be **DENIED**.

---

affirmed the procedural bar).
Case No. 5:08cv307MCR/EMT

At Pensacola, Florida, this <u>6</u><sup>th</sup> day of April 2011.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

<u>**NOTICE TO THE PARTIES**</u>

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. <u>**Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**</u> A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; <u>**United States v. Roberts**</u>, 858 F.2d 698, 701 (11th Cir. 1988).